UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAMES C.,

       **Plaintiff,**

                                   **Case No. 1:21-cv-3378**

     v.                            **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

       **Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff James C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

On September 10, 2018, Plaintiff filed his application for benefits, alleging that he has been disabled since January 5, 2018. R. 95, 109, 209–12. The application was denied initially and upon reconsideration. R. 110–14, 116–18. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

administrative law judge. R. 119–20. Administrative Law Judge ("ALJ") Henry Kramzyk held a

hearing on July 30, 2020, at which Plaintiff, who was represented by counsel, testified, as did a

vocational expert. R. 36–82. In a decision dated August 17, 2020, the ALJ concluded that

Plaintiff was not disabled within the meaning of the Social Security Act at any time from January

5, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 16–30. That

decision became the final decision of the Commissioner of Social Security when the Appeals

Council declined review on January 19, 2021. R. 1–6. Plaintiff timely filed this appeal pursuant

to 42 U.S.C. § 405(g). ECF No. 1. On June 1, 2021, Plaintiff consented to disposition of the

matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the

Federal Rules of Civil Procedure. ECF No. 8.[2] On that same day, the case was reassigned to the

undersigned. ECF No. 9. The matter is ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists

only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is

overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or

"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of

Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see

K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

  Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or

simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.    Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc.*

*Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

In considering a claim for Disability Insurance Benefits, the ALJ determines at step one whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 35 years old on his alleged disability onset date. R. 28. He met the insured status requirements of the Social Security Act through March 31, 2022. R. 19. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between January 5, 2018, his alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff's degenerative disc disease in lumbar spine, radiculopathy, postlaminectomy syndrome, diabetes mellitus, and obesity were severe impairment. *Id.* The ALJ also found that Plaintiff's diagnosed depression and generalized anxiety disorder were not severe. R. 19−21.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 21−22.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 22−28. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a delivery driver, septic tank servicer, and truck driver. R. 27−28.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 300,000 jobs as a small parts assemble; and approximately 28,000 jobs as an inspector/hand packager— existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 28−29. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 5, 2018, his alleged

disability onset, through the date of the decision. R. 29.

Plaintiff disagrees with the ALJ's findings at steps two, three, four, and five and asks that

the decision of the Commissioner be reversed. *Plaintiff's Brief,* ECF No. 12; *Plaintiff's Reply*

*Brief*, ECF No. 14. The Acting Commissioner takes the position that her decision should be

affirmed in its entirety because the ALJ's decision correctly applied the governing legal

standards, reflected consideration of the entire record, and was supported by sufficient

explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF

No. 13.

## IV.      DISCUSSION

Plaintiff raises a number of challenges to the ALJ's decision, including, *inter alia*, that

the ALJ erred at step three of the sequential evaluation in his consideration of Plaintiff's physical

impairments. *Plaintiff's Brief*, ECF No. 12, pp. 19–24; *Plaintiff's Reply Brief*, ECF No. 14, pp.

8–9. Plaintiff specifically contends that the ALJ failed to properly consider the medical evidence

at step three when concluding that Plaintiff's spinal impairments did not meet or medically

equal, *inter alia*, Listing 1.04A,[3] which addresses disorders of the spine. *Id*. Plaintiff's arguments

are well taken.

At step three, an ALJ considers whether the combination of the claimant's medically

determinable impairments meets or equals the severity of any of the impairments in the Listing

of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it

satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those

criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v.*

---

[3] Plaintiff argues that his spinal impairment meets Listing 1.04A and 1.04C, but apparently does
not contend that the impairment meets Listing 1.04B. *See id*.

*Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id.*

At the time of the ALJ's decision, Listing 1.04 addressed disorders of the spine and required that a claimant demonstrate the following in order to meet Listing 1.04A:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04 (eff. May 21, 2020, to Apr. 1, 2021).[4]

In the case presently before the Court, the ALJ determined at step three that Plaintiff did

not meet or medically equal Listing 1.04, reasoning as follows:

> The medical evidence does not establish the requisite evidence of nerve root
> compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing
> 1.04 (3F/9 [R. 439]). Moreover, there is no evidence that the claimant's back
> disorder has resulted in an inability to ambulate effectively, as defined in
> 1.00(B)(2)(b). While the claimant and his representative argue the claimant is
> currently using a walker to ambulate, discharge notes from the claimant's most
> recent surgery do not mention the use or prescription of a walker (17F; 18F).
> Moreover, the claimant displayed a normal and stable gait at several medical
> appointments in the record (5F; 9F/2-5; 11F/1-4). He did not note the use of any
> assistive device on his function report (5E/10). Thus, the undersigned finds the
> claimant does not meet or equal listing 1.04.

R. 21.

Plaintiff challenges this evaluation, arguing, *inter alia*, that the ALJ erred in finding that

the medical evidence did not establish the existence of nerve root compression as required by

Listing 1.04A. *Plaintiff's Brief*, ECF No. 12, pp. 21–23; *Plaintiff's Reply Brief*, ECF No. 14, p.

8. Plaintiff first contends that, contrary to the ALJ's representation, the ALJ's cited evidence–an

MRI conducted in June 2017 and prior to Plaintiff's alleged disability onset date of January 5,

2018–reflects nerve root compression. *Plaintiff's Brief*, ECF No. 12, p. 21 (citing R. 439 (copy

of MRI dated June 10, 2017), R. 467 (copy of operative report dated September 7, 2017,

reflecting, *inter alia*, a left L5-S1 microdisectomy). Plaintiff also points to other evidence in the

record that undermines the ALJ's finding, including a February 2018 MRI that reflects, *inter

alia*, at L5-S1 "a large recurrent left central disc herniation, protrusion type which fills the left

---

[4] Listing 1.04C requires evidence of "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." *Id.* at § 1.04C.

lateral recess and impinges the traversing left-sided nerve roots[,]" R. 475, which required the

revision of the L5-S1 laminectomy and transforaminal lumbar interbody fusion on March 16,

2018, R. 469. *Plaintiff's Brief*, ECF No. 12, p. 21. Plaintiff also notes that, thereafter, he

underwent physical therapy and multiple injections but that, notwithstanding some improvement,

he continued to experience hypersensitivity as well as numbness and tingling in the left calf into

his foot, positive straight leg raising on the left, and eventual diagnoses of radiculopathy,

intervertebral disc displacement, and postlaminectomy syndrome. *Id*. at 21–22 (citing R. 419–

30, 667–68). Plaintiff also refers to an EMG study that suggested "ongoing left L5

radiculopathy," R. 874, and to progress notes from Paul Marcotte, M.D., suggesting that, based

on CT and MRI studies, Plaintiff's ongoing numbness might be from lateral recess stenosis at

L5-S1.[5] In light of this evidence, Plaintiff contends that he meets Listing 1.04A and that the

ALJ's finding that there was no nerve root compression was factually inaccurate. *Id*. at 22.

For her part, the Acting Commissioner argues that Plaintiff failed to prove that he met all

the criteria for, *inter alia*, Listing 1.04A and that the ALJ reasonably found that Plaintiff did not

meet that listing. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13, pp. 15–16.

The Acting Commissioner specifically contends that "the evidence showed that Plaintiff did not

have motor loss or evidence of a positive straight leg raising test in both the sitting and supine

positions[,]" pointing out that the ALJ considered that Juan Carlos Cornejo, M.D., who

performed a consultative examination on February 2, 2019, which reflected negative straight leg

raising tests in the sitting and supine positions and that "subsequent treatment notes documented

full strength throughout." *Id*. at 16 (citing R. 26, 508, 667–68).

---

[5] Dr. Marcotte also surgically removed nonsegmental hardware from Plaintiff's back in March 2020, based on the doctor's concern that Plaintiff's continuing pain may have been caused by the hardware. *Id*. (citing R. 874, 880–81).

Plaintiff's arguments are well taken. The ALJ stated that he relied on a June 2017 MRI to support his finding that the evidence did not establish nerve root compression. R. 21 (citing R. 3F/9, R. 439). However, that evidence actually reflects, *inter alia*, "left lateral recess disc protrusion which impinges upon the left S1 nerve root"; "a broad-based central disc protrusion" at L4-L5, slightly decreased from a prior MRI, with evidence of a "mass effect upon the left traversing L5 nerve root" with "mild canal and bilateral foraminal stenosis"; and, at L3-L4, a "broad-based central disc protrusion with mild stenosis" and "[m]ild left foraminal stenosis" unchanged from prior study. R. 439. Notably, the ALJ did not explain how this evidence establishes that Plaintiff's spinal impairment did not involve a nerve root compression, or why this evidence supports the ALJ's conclusion that Plaintiff's spinal impairment does not meet Listing 1.04A. R. 21.

Subsequent evidence also supports Plaintiff's assertion that he suffered from nerve root compression during the relevant period. His February 2018 MRI reflected, *inter alia*, "a large recurrent left central disc herniation [at L5-S1], protrusion type which fills the left lateral recess and impinges the traversing left-sided nerve roots." R. 475. Although, as the ALJ noted, Dr. Cornejo's February 2019 examination revealed no pain during straight leg raising tests, R. 26, subsequent treatment notes in 2019 and 2020 reflect that Plaintiff had positive straight leg raising tests on the left as well as pain and sensory deficiencies. R. 664 (reflecting, *inter alia*, positive straight leg test on the left and assessments of low back pain, radiculopathy in the lumbar region, and other intervertebral disc displacement in the lumbar region in April 2019), 668 (reflecting, *inter alia*, positive straight leg test on the left and decreased sensation in the left L4-L5 dermatomes in September 2019), 671 (reflecting assessment of radiculopathy in the lumbar region in August 2019), 869 (reflecting, *inter alia*, positive straight leg raising test on the left

side, "[s]ensory examination was diminished in his distal left lower extremity[,]" and "needle sampling in his tibialis posterior and lumbar paraspinal musculature (mid to lower) revealed increased insertional activity with large fibrillation and positive wave potentials noted, greatest in the lower lumbar paraspinal musculature" and that "[v]oluntary motor unit activity revealed diminished recruitment" in March 2020), 874 (reflecting, *inter alia*, EMG studies that suggest "ongoing left L5 radiculopathy" and the opinion that Plaintiff's ongoing numbness might be from lateral recess stenosis at L5-S1 in March 2020).

As previously discussed, an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. Based on the present record, absent explanation by the ALJ, it is not clear to the Court how the ALJ concluded that Plaintiff does not meet or medically equal Listing 1.04A. *See M.K. v. Comm'r of Soc. Sec.*, No. CV 20-0934 (RBK), 2021 WL 1186775, at *5 (D.N.J. Mar. 30, 2021) ("A claimant may be deemed disabled under this Listing [1.04] if she suffers from an impairment of her nerve root or the spinal cord in the cervical area, lumbar area, or both."); *Stowers v. Saul*, No. CV 19-14110, 2020 WL 7586948, at *8-9 (D.N.J. Dec. 22, 2020) (remanding where, *inter alia*, "Plaintiff's medical record contains evidence which suggests that Plaintiff suffered from several, in fact most, of the findings required by Section 1.04A."); *Karstein v. Comm'r of Soc. Sec.*, No. CV 17-04502, 2018 WL 5669172, at *7 (D.N.J. Oct. 31, 2018) ("First, Defendant argues that Plaintiff cannot meet the requirements of listing 1.04(A) because Plaintiff does not point to findings of "nerve root compression." (Def. Br. at 8.) But if credited, Plaintiff's radiculopathy may support that finding.") (citations omitted); *Stockett v. Comm'r of Soc. Sec.*, 216 F. Supp. 3d 440, 456–57 (D.N.J. 2016) ("As for nerve root compression, the Plaintiff notes that she has been repeatedly diagnosed with radiculopathy, which is evidence of nerve root compression.")

(collecting cases). Accordingly, the Court cannot meaningfully review the ALJ's finding that

Plaintiff does not meet or medically equal 1.04A and determine whether substantial evidence

supports this decision at step three. This Court will not speculate as to how the ALJ reached his

decision but will instead remand the matter for further consideration even if, upon further

examination of these issues, the ALJ again concludes that Plaintiff is not entitled to benefits. *See*

*Schneider v. Saul*, No. CV 3:18-0193, 2020 WL 774036, at *4 (M.D. Pa. Feb. 18, 2020) (stating

that because the plaintiff's medical record as well as his testimony "reveal that some of the

elements of Listing 1.04A were present, the ALJ was required to fully explain her finding that

plaintiff's spinal impairment did not meet or equal this Listing" and concluding that the "ALJ

failed to provide a sufficient discussion of the evidence regarding her finding with respect to

Listing 1.04A. Further proceedings are necessary to fully develop the record regarding Listing

1.04A"); *Swanson v. Comm'r of Soc. Sec*., No. 1:15-CV-08894-NLH, 2017 WL 825199, at *7

(D.N.J. Mar. 2, 2017) ("It is for the ALJ to articulate why Plaintiff meets or does not meet the

criteria of Listing 1.04(A), and therefore, the matter must be remanded for further consideration

so that the ALJ can do so."); *cf. Zuschlag v. Comm'r of Soc. Sec. Admin*., No. 18-CV-1949, 2020

WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same

conclusion, but it must be based on a proper foundation.").[6]

## V.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS**

the matter for further proceedings consistent with this *Opinion and Order*.

---

[6] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the
Court concludes that the matter must be remanded for further consideration of Listing 1.04A at
step three of the sequential evaluation, the Court does not consider those claims.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  May 13, 2022                                          *s/Norah McCann King*
                                                          NORAH McCANN KING
                                                   UNITED STATES MAGISTRATE JUDGE

15